

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

March 11, 1947

Board of Water Engineers        Opinion No. V-82
State of Texas
Austin, Texas                   Re:  Appropriated Water -
                                     change of purpose
                                     and place of use and
                                     the watershed ques-
Gentlemen:                           tion.

        The questions raised are stated in your letter
of February 26, 1947, as follows:

        "In 1936, the Board granted a permit to
    the Brazos Irrigation Company to change the
    use of a part or all of the waters appropriat-
    ed under Permit No. 1040 to manufacturing or
    commercial use.  The question arises - would
    the American Canal Company be authorized under
    this 1936 permit to take and divert water for
    municipal and industrial use outside of the
    boundaries of the original Permit No. 1040
    without obtaining a permit from the Board;
    and, further, would they be permitted to car-
    ry the water so appropriated outside the drain-
    age area of the Brazos River."

        We have been furnished with the permit and amend-
ments thereto under which the American Canal Company (suc-
cessor to Brazos Valley Irrigation Company) is now using
certain water from the Brazos River.  In so far as they con-
cern this opinion, the facts, as reflected by the permit, as
amended, appear to be these:

        By Permit No. 1040, dated September 27,
    1927, the Board of Water Engineers granted to
    the Brazos Valley Irrigation Company the right
    to appropriate 99,932 acre-feet of water per
    annum from the unappropriated waters of the
    Brazos River, at a rate of diversion not to ex-
    ceed 685 cubic feet per second of time, or so
    much thereof as may be necessary when beneficial-
    ly used for the irrigation of 49,966 acres of
    land, located in Fort Bend County.  The permit

was issued subject to certain agreements
made between the Irrigation Company and
third persons, which agreements are not
material to this opinion.

On June 16, 1936, the Board used
the following language in amending the
original permit: "Now, therefore, the
Board of Water Engineers for the State
of Texas, does by these presents grant
this amendment to Permit No. 1040 here-
tofore issued to the Brazos Valley Ir-
rigation Company, and henceforth the
Brazos Valley Irrigation Company may ap-
propriate and use the water, or any por-
tion of such water, allocated by said
Permit No. 1040, for 'manufacturing or
commercial' use."

On October 18, 1941, Permit 1040 was
again amended. This amendment referred to
the Board's action in granting the original
permit and to its action in granting the
amendment of June 16, 1936 "to permit said
company to use a portion or all of the waters
appropriated thereunder for manufacturing and
commercial purposes" and then authorized the
Brazos Valley Irrigation Company "to change
the place of use of a portion or all of the
water permitted to be appropriated under said
Permit No. 1040 for the purpose of irrigating
44,851 acres of land located outside the
watershed" in Brazoria, Galveston, Harris and
Fort Bend Counties, leaving 5,115 acres of
land described in the original permit within
the Brazos River watershed still to be ir-
rigated out of the original appropriation.

On May 28, 1942, the Board again amend-
ed Permit No. 1040, the effect of which was
to permit the irrigation company to irrigate
outside the watershed 3,328 of the 5,115 acres
remaining in the watershed under the prior
amendment, and leaving 1,787 acres of the
original permit still within the Brazos River
watershed. This amendment is similar in form

to the amendment of October 18, 1941.

The question of the Board's jurisdiction and power to regulate and control change of use and place of use of water which has been appropriated and put to beneficial use under permits issued by the Board, had not been considered by the courts of this State until the case of Clark v. Briscoe Irrigation Company, decided February 19, 1947, by the Austin Court of Civil Appeals in Opinion No. 9588, and not yet reported.

The facts of the Clark case are these. The permit held by Briscoe Irrigation Company authorized appropriation of 75,000 acre-feet per annum for irrigation, mining and municipal use. Of this amount, 50,000 acre-feet was allocated for the purpose of irrigation, the remaining 25,000 acre-feet being allocated for mining and municipal purposes. The 25,000 acre-feet permitted for mining and municipal use was not involved since it was never beneficially used as required to complete the appropriation thereof. The 50,000 acre-feet allocated for irrigation was beneficially used for the length of time required by Article 7592, V.A.C.S., so as to vest the title provided for in that article. Upon the Board's denial of an application to amend the permit to substitute other specified lands for those designated in the permit, and to change the purpose of use so as to include mining, manufacturing and municipal, the irrigation company sought a declaratory judgment to the effect that it had the inherent right, growing out of the right vested by reason of Article 7592, to change the purpose of use of the water from irrigation to other lawful uses, such right being free of any regulation or control by the Board so long as the use was a beneficial one authorized by law and did not result in an increased appropriation or taking of a greater quantity of water than was authorized by the permit, or impair the vested rights of other appropriators.

After reviewing the conservation amendment to the Constitution (Article XVI, Sec. 59-a) and the statutes dealing with the subject, the Court expressed its opinion in the following language:

"These statutory provisions clearly invest the Board with the power and duty to determine whether the uses for which the application is made meet the statutory objectives, including that of being in the public interest. Necessarily the determination of that issue involves the exercise of a sound

and reasonable discretion. Nor is it contended that the Board has not such discretion in passing upon an original application.

"Every consideration for vesting such original discretion in the Board applies with equal force for its exercise in case of change of purpose or place of use. We therefore think there is implicit in these provisions of our laws, constitutional and statutory, a vesting in the Board of the continuing duty of supervision over the distribution and use of the public waters of the State so as to see that the constitutional and statutory objectives are attained, and carrying with it the requirement that any substantial change in use or place of use not authorized in the original permit, must have the approval of the Board. Any other construction might easily result in defeat or circumvention of the objectives of the conservation laws.

" . . .

"We hold that authority of the Board is essential to authorize a change in use or place of use from that authorized in the permit."

Based on Clark v. Briscoe Irrigation Company, supra, it is our opinion that the American Canal Company may not use the water appropriated by it under its present permit for municipal purposes without the usual application to the Board.

We are unable to see a distinction as regards the change from a manufacturing and commercial use as stated in the permit to the industrial use referred to in your letter. It is provided in Article 7470, V.A.C.S., that "the appropriation of water must be for irrigation, mining, milling, manufacturing, the development of power, the construction and operation of waterworks for cities and towns, or for stock raising." And, in fixing priorities between uses, Article 7471, V.A.C.S., after granting No. 1 priority to domestic and municipal use, gives No. 2 priority to manufacturing, which is described as, "water to be used in processes designated to convert materials of a lower order of value into form having greater usability and commercial

value and to include water necessary for the development of electric power by means other than hydroelectric." No provision is made in the statutes relative to industrial use as such. For the purpose of this opinion industrial, manufacturing and commercial will be considered as synonymous and mean the same thing as the manufacturing use referred to in the statutes.

The situation as regards the manufacturing use under consideration here is distinguishable from that involved in the Clark case in two respects: (1) Here, the original permit has already been amended by the Board to allow a manufacturing use of all or any portion of the water allocated to the original permit. In the Clark case, this amendment to the permit was sought and denied. (2) Although not material to the decision, the facts there show that a certain proportion of the total allocation was set aside to mining and municipal while the remainder was allocated to irrigation. Here the total allocation is for irrigation, manufacturing and commercial.

Reference is now made to our Opinion No. O-3397, addressed to the Board of Water Engineers. Among other problems, the opinion was concerned with (1) the right of permittee to irrigate land other than that described in his permit, and (2) the authority of the Board to grant an amendment to such permit to allow irrigation of such other land. The opinion concludes that permittee's irrigation use is restricted to the land described in such permit and that a change of place of use is not permitted without the authority of the Board. We quote from the opinion as follows:

"However, a careful reading of the Texas Statutes dealing with appropriation of water reveals a uniform insistence by the Legislature that if the appropriated water is to be used for irrigation purposes, the land to be irrigated must be described in the various instruments required to perfect the appropriation. We find this requirement in the statute covering the contents of the application, that covering the contents of the notice of hearing on the permit, and in the statute dealing with the contents of the permit itself. The Legislature has set out no such requirements where the water is to be used for other purposes.

" . . .

"If it was the legislative intent that
an appropriator of water for irrigation pur-
poses should be free to use such water to
irrigate any land he chose, we can conceive
of no reason for requiring that the land be
described in each of these enactments. If
it was intended that the appropriator could
ignore the fact that a particular tract of
land was described in his permit, it must be
assumed that the Legislature has required a
useless thing. Under well recognized rules
of statutory construction we can make no such
assumption."

At first glance, the result to be reached here,
based on Opinion No. O-3397, would be that since the Legis-
lature has not required a description of place of use of
the non-irrigating statutory uses in the original applica-
tion and permit, changes in the place of such use without
further application to the Board must follow as a matter of
course. Nor at first glance, does Clark v. Briscoe Irriga-
tion Company, supra, seem to go so far as to require the
Board's permission to change when the use is already auther-
ized by permit. However, no logical reason exists for dis-
tinguishing change of place of use as such, from change of
place of use as between the various uses authorized by
statute. We interpret Clark v. Briscoe Irrigation Com-
pany as holding that application to the Board is required
to change the place of use as such and for all permitted
purposes and not for irrigation alone. No good reason ex-
ists why permittee should be confined to one area in con-
ducting irrigation, absent authorization to change by the
Board, and at the same time be allowed to exercise the
other uses covered by his permit at any place or places
he desires. Here the water to be used in either case is
the same water. Can it logically be restricted in change
for irrigation, but not manufacturing? We think not.
Clark v. Briscoe Irrigation Company has inferentially mov-
ed the law of appropriation in this State over the void
left by our statutes in not providing for application for
change of use and place of use, and the "continuing duty
of supervision over the distribution and use of the public
waters of the State so as to see that the constitutional
and statutory objectives are attained," accorded the Board
by the opinion surely must relate to change of place of
use for all purposes and not for irrigation alone. We
knew of no other result which would not in the words of

the opinion "result in defeat or circumvention of the objectives of the conservation law", as that law has been construed and carried forward by that case. We consider Clark v. Briscoe Irrigation Company as controlling on this subject.

We think it unfortunate that the Board has not, and in our opinion it may, under its regulatory powers, Art. 7531, V.A.C.S., and under the last statement of Article 7515, V.A.C.S., require designation of the place of the use of non-irrigating uses. Article 7515, V.A.C.S., provides as follows:

"Every permit issued by the Board, under the provisions of this chapter, shall be in writing, attested by the seal of said Board and shall contain substantially the following: The name of the applicant to whom issued; the date of the issuance thereof; the date of the filing of the original application therefor in the office of the Board; the use or purpose for which the appropriation of water is to be made; the amount or volume of water authorized to be appropriated; a general description of the source of supply from which the appropriation is proposed to be made; and, if such appropriation is for irrigation, a description and statement of the approximate area of the lands to be irrigated; together with such other data and information as the Board may prescribe." (Underscoring ours)

In this connection, we recommend for your future use a form of permit which allocates a specific quantity of water to each permitted use in order that permittee may show by actual beneficial user that the water to which he is entitled under his permit has ripened into the title vested by reason of Article 7592. It seems to us that this type of permit designating the place of use of all permitted uses, would assist you in carrying out the regulatory obligation which you have under the statutes and under the construction given them by Clark v. Briscoe Irrigation Company, supra.

The question now arises as to permittee's right to use the water under its permit for manufacturing purposes beyond the watershed without further authority from the Board. The amendments of October 18, 1941, and May 28,

1942, clearly carry the irrigation use on all except
1787 acres beyond the watershed.  The language which
is essentially the same in each of the amendments
granting this authority, is quoted as follows:

> "NOW, THEREFORE, the Board of Water
> Engineers for the State of Texas, does
> by these presents GRANT the Authority
> and the Right, subject to all the terms,
> agreements, conditions and restrictions
> contained in Permit No. 1040, unto the
> Brazos Valley Irrigation Company to change
> its Place of Use of the water, for irriga-
> tion under said Permit No. 1040 from the
> lands originally described in said permit to
> the irrigation of the following described
> lands, towit:

> "  .  .  .

> "It is expressly provided that all of
> the rights, terms, agreements, conditions
> and restrictions contained in Permit No.
> 1040 shall remain in full force and effect
> and the Authority and right to change the
> Place of Use herein granted is granted sub-
> ject to all such rights, terms, agreements,
> conditions and restrictions.

> "It is further expressly provided that
> the granting of this Right and Authority shall
> not in any way increase, nor decrease, the
> Permittee's existing rights under said Permit
> No. 1040, except that Permittee may exercise
> its irrigation rights on the lands hereinbefore
> described (as Tract A and Tract B), and shall
> not irrigate other lands than those hereinafter
> described unless lawfully permitted to do so."

This language is preceded by recitations con-
cerning the previous action of the Board in granting the
original permit and in granting the amendment authorizing
use for manufacturing purposes, the application by the ir-
rigation company to irrigate beyond the watershed, the
hearing on such application and the finding that a change
in place of use would not result in an increased appropria-
tion or interfere with vested rights.

We have examined the two watershed applications in question and neither makes application to remove the manufacturing use beyond the watershed.

Our statutes on this subject stress that the water itself is the element upon which the watershed restriction is placed. Article 7589, V.A.C.S., makes it unlawful to divert water beyond the watershed and Article 7590, V.A.O.S., provides a method by which water may be diverted upon proper application and hearing. The statutes provide as follows:

Article 7589-

"It shall be unlawful for any person, association of persons, corporation, water improvement or irrigation district to take or divert any of the water of the ordinary flow, underflow, or storm flow of any stream, water course, or watershed, in this State into any other natural stream, water course or watershed, to the prejudice of any person or property situated within the watershed from which such water is proposed to be taken or diverted."

Article 7590-

"Before any person, association of persons, corporation, water improvement or irrigation district shall take any water from any natural stream, water course, or watershed in this State into any other watershed, such person, association of persons, corporation, water improvement or irrigation district shall make application to the Board of Water Engineers for a permit so as to take or divert such waters, and no such permit shall be issued by the Board until after full hearing before said Board as to the rights to be affected thereby, and such hearing shall be held and notice thereof given at such time and such place, in such mode and manner as the Board may prescribe; and from any decision of the Board any appeal may be taken to the district court of the county in which such diversion is proposed to be made, in the mode and manner prescribed in this chapter for other appeals from the decision of the Board."

Although the Board's intention as expressed in the two watershed amendments is not entirely clear, we interpret these amendments as necessarily carrying the water beyond the watershed for all permitted purposes and not for irrigation alone. We think that all uses authorized by a permit move with the water beyond the watershed and see no logic in requiring permittee to do that which he has done already, namely, reapply and be re-permitted to move exactly the same water beyond the watershed. By this, we do not mean that under a permit allocating specific quantities of water to specific uses, that a permit to remove water allocated to one of the permitted uses will move the water allocated to a permitted use not involved in the removal application. That is not the situation involved here. Nor do we mean to infer that this in any way limits what has been heretofore said as to change of use and place of use. Articles 7589 and 7590 (supra) relate only to removing water beyond the watershed and create no restriction on use or place of use. These restrictions as provided by statute, and as carried forward by Clark v. Briscoe Irrigation Company (supra), apply, in our opinion, generally, and are not confined to use within the watershed. What we have said previously on this subject of change applies as well beyond the watershed.

All conclusions reached herein relating to change of use and place of use are subject to the general rule prohibiting such changes when the amount of appropriated water is increased, or when prior vested rights are injured. These matters are for your consideration at the hearing on the application for change.

## SUMMARY

Under a permit granted by the Board of Water Engineers authorizing the appropriation of water for irrigation purposes, and amendments thereto authorizing the use of a portion or all of the water so appropriated for manufacturing and commercial purposes, and permitting the removal of the bulk of the water beyond the watershed for use in irrigating certain described lands; permittee must apply to the Board for a permit to use the appriated waters for municipal purposes and for a permit to change the place of use for manu-

facturing and commercial purposes, both whith-
in and without the watershed.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By        H. D. Pruett, Jr.
                       Assistant

HDP/bt/lh

APPROVED: March 11, 1947

ATTORNEY GENERAL